UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: FEB 2 0 2015
```

CLAYTON ANDREWS,

               Plaintiff,

        -against-

REALOGY CORPORATION SEVERANCE
PAY PLAN FOR OFFICERS,

               Defendant.

No. 13-CV-8210 (RA)

OPINION AND ORDER

RONNIE ABRAMS, United States District Judge:

Plaintiff Clayton Andrews commenced this action against Defendant Realogy Corporation Severance Pay Plan for Officers ("the Plan") under the Employment Retirement Income Security Act of 1974 ("ERISA") § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), to recover severance payments for which he is allegedly entitled. Before the Court is Defendant's motion to dismiss the Amended Complaint for failure to state a claim. For the reasons that follow, Defendant's motion is granted.

## BACKGROUND[1]

### I.    Factual Background

On or about November 3, 2003, Plaintiff entered into an employment agreement (the "Employment Agreement") with Sotheby's International Realty, Inc. ("SIR"), a real estate bro-kerage and franchisor. (Am. Compl. at ¶¶ 1, 5.) SIR was a subsidiary of Realogy Corporation,

---

[1] The undisputed facts are taken from Plaintiff's Complaint and documents incorporated in it by reference. See Rothman v. Gregor, 220 F.3d 81, 88 (2d Cir. 2000) ("For purposes of a motion to dismiss, we have deemed a complaint to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference . . . and documents that the plaintiffs either possessed or knew about and upon which they relied in bringing suit . . . .").

which established the Plan to provide severance benefits for certain employees and those of certain of its subsidiaries, including SIR. (Id. at ¶ 2.) The Plan is governed by ERISA, 29 U.S.C. § 1001, et seq., and defines as the "Plan Administrator" "[t]he Company [Realogy Corporation] or such other person or committee appointed from time to time by the Company to administer the Plan. Until a successor is appointed by the Company, the Plan Administrator shall be the Company's Senior Vice President of Human Resources or his or her designee." (Novich Decl., Ex. G ("Plan") art. II § (i).)

The Employment Agreement with SIR provided that Plaintiff would be employed as the Senior Vice President of SIR's Jackson Hole Brokerage Offices. (Am. Compl. at ¶ 5.) The Employment Agreement also provided that Plaintiff would be paid a base salary and be eligible to participate in SIR's annual incentive bonus plan, welfare benefits plan, and 401(k) plan. (Id.; Novich Decl., Ex. B.) The Employment Agreement made clear that Plaintiff's employment was at-will. (Novich Decl., Ex. B.)

Throughout Plaintiff's employment with SIR, he earned "substantial annual bonuses." (Am. Compl. at ¶ 9.) Between 2004 and 2009, Plaintiff "could and most often did [earn] bonus payments in excess of $100,000.00[,] making up a third of his total compensation package." (Id. at ¶ 10.)

On or about April 8, 2010, SIR notified Plaintiff that it was selling the Jackson Hole Brokerage Offices to Huntsman Financial Consulting L.C. ("Huntsman"). On April 16, 2010, Plaintiff sent David Huntsman, Huntsman's President, an email with a copy of the Employment Agreement attached. (Novich Decl., Ex. D.) Plaintiff's email requested "written assurance . . . that my agreement with [Huntsman] will be comparable to or better than my existing contract, including, but not limited to salary (currently $200k), benefits (medical, 401(k), vacation), bonus

2

(9% + 20% pre-royalty and allocations), and the non-compete (6 months)." (Id.) In response, David Huntsman wrote, "I want to confirm to you in writing to add to my verbal assurance that upon closing of this transaction we will honor and abide by the conditions and elements of your existing employment contract with SIR going forward th[r]ough the end of 2010." (Id.) Plaintiff subsequently replied that he was "comfortable with your verbal and written assurance for the time being until such time as we are able to discuss the specifics of my role after 2010." (Novich Decl., Ex. I at 38.)[2]

SIR and Huntsman memorialized the terms of the sale in an Asset Purchase Agreement ("APA"). (Am. Compl. at ¶ 12; Novich Decl., Ex. E (the "APA").) The APA provided that "[o]n the Closing Date, Buyer [Huntsman] shall offer employment, including all standard employee benefits of Buyer, to each and every employee of the Business, and Seller [SIR] shall transfer the employment of each employee who accepts such employment offer from Buyer as of the Closing Date." (APA § 7(b).) The APA further provided that if Huntsman terminated former SIR employees for certain reasons within one year of the Closing Date, Huntsman would be required to pay severance benefits in accordance with Realogy's severance terms. (APA § 7(f)(i).)

The transaction between SIR and Huntsman closed on May 7, 2010. (Am. Compl. at ¶ 12.) Plaintiff then went to work for Huntsman in the capacity of managing broker, which, according to the Amended Complaint, was in "the same capacity he held with SIR . . . ." (Id. at ¶

---

[2] The page citations for Exhibits to the Novich Declaration refer to the page numbers printed at the top of the document by court docketing.

13.) Plaintiff worked for Huntsman until June 2011, when Huntsman terminated his employ-

ment. (Novich Decl., Ex. J at 3.) Plaintiff thereafter sought severance benefits not from

Huntsman, but from his former employer under the Plan.[3]

## II.    Procedural Background

### A.  Plaintiff's Administrative Claim for Severance Benefits

By letter to the Realogy Plan Administrator, dated May 27, 2013, Plaintiff filed a claim

for severance payments allegedly due to him under the Plan. (Am. Compl. at ¶ 20; Novich Decl.,

Ex. F ("Claim Letter").) In the letter, Plaintiff characterized his employment transfer from SIR

to Huntsman as an "involuntary terminat[ion] by SIR" which qualified Plaintiff to severance

benefits under the Plan. (Claim Letter at ¶ 4.)

> The Plan provides that an employee is eligible for severance pay if, in relevant part:
>
> (a) you are involuntarily terminated for . . .
> elimination or discontinuation of your job or position, if you are not offered a
> comparable position with an Employer, a third party or an outsourcing com-
> pany. Comparability shall be determined in the sole and absolute discretion of
> the Plan Administrator, and such analysis may include without limitation the
> following as compared with your current position: (1) the location of the posi-
> tion offered; (2) the total compensation of the position offered including base
> pay, variable pay and other benefits; and (3) the primary duties and responsi-
> bilities of the position offered . . . .

(Plan art. III § A(a).)

Plaintiff primarily argued that he was due severance payments pursuant to the Plan be-

cause Huntsman did not offer him a "comparable position." Specifically, Plaintiff contended

that (1) Huntsman's employee benefits "were not the same or comparable [to SIR's] with respect

to either the bonus or the severance"; (2) under the APA, Plaintiff was only entitled to severance

benefits from Huntsman if he was terminated within one year of employment, whereas SIR's

---

[3] As discussed further below, Plaintiff filed suit separately against Huntsman in December 2012. See An-
drews v. Sotheby Int'l Realty, Inc., 12-CV-8824-RA.

severance plan had no such limitation; (3) Huntsman had refused to pay Plaintiff a bonus for 2010 despite their agreement to do so; and (4) Huntsman maintained that even if it were required to pay the 2010 bonus, it would be under no obligation to pay any bonuses for subsequent years of employment, even though SIR provided a bonus for every year that there was a net profit. (Claim Letter at ¶ 8.) Plaintiff concluded that, taking into consideration "total compensation" in its discretionary determination of comparability, the Plan Administrator should find that Huntsman's employment offer was not comparable to his employment with SIR. (Id. at 10.)

The Plan Administrator, in an undated letter, denied Plaintiff's claim for three independent reasons: first, because the claim was untimely; second, because the Huntsman position was comparable; and third, because Plaintiff failed to execute a separation agreement and general release of claims, as required by the Plan. (Novich Decl., Ex. H ("Denial Letter").) Because the instant motion focuses only on the Plan Administrator's comparability determination, the Court recounts only the facts pertinent to that determination.

In finding that Huntsman had in fact offered Plaintiff comparable employment, the Plan Administrator emphasized that the Plan vests "sole and absolute discretion" in the Plan Administrator, and provides factors that the Plan Administrator "may" consider. (Denial Letter at 27-28.) Having laid out that standard, the Plan Administrator found that the Huntsman position was in the "same location" as the SIR position; that Plaintiff had "the same duties and responsibilities he had prior to the sale"; that the "base pay was also the same"; and that "most of the benefits provided by [Huntsman] were comparable to the benefits [Plaintiff] had prior to the sale." (Id. at 28.) The Plan Administrator rejected Plaintiff's argument that the Huntsman position was not comparable because Huntsman did not have a severance plan and because Plaintiff had not been

5

paid a bonus. (Id.) Contrary to these assertions, the Plan Administrator stated that the claim it-self "acknowledges that [Huntsman] did, in fact, provide [Plaintiff] with severance coverage for the first year, and that it agreed to honor and abide by the terms of his employment contract with [SIR] (including the bonus provision). Thus, while [Plaintiff] contends that [Huntsman] did not fulfill its contractual obligations to him, it is undisputed that he was offered comparable terms of employment." (Id.) In any event, the Plan Administrator continued, the "other facts present in this case (e.g., identical duties and responsibilities, identical location, identical base pay, and pri-marily comparable benefits) establish that the position with the Buyer was comparable under the Plan Administrator's interpretation of that term as used in the Plan." (Id.) Plaintiff was therefore not eligible for severance benefits.

### B. Plaintiff's Administrative Appeal

In accordance with Plan procedures, Plaintiff appealed this decision to the Plan Adminis-trator by letter dated June 20, 2013. (Am. Compl. at ¶ 22; Novich Decl., Ex. I ("Appeal Letter").) Plaintiff argued that the denial of benefits was arbitrary and capricious and unsupported by sub-stantial evidence. (Appeal Letter at 2.)

Plaintiff stated that he did not dispute that the Huntsman position was in the same location and entailed the same duties and responsibilities as his SIR position. (Id. at 3-4.) Plaintiff argued, however, that comparability of those factors was only for a short period – specifically, until June of 2011 – and that Huntsman had only committed to abiding by the terms and conditions of Plain-tiff's SIR employment contract through the end of 2010. (Id. at 4.)

Similarly, Plaintiff did not dispute that his base pay was the same, but argued that his over-all pay and benefits were not since Huntsman did not commit to paying a bonus or severance beyond the first year of employment. (Id.) Plaintiff asserted that it was arbitrary and capricious

6

for the Plan Administrator not to consider "total compensation" and the fact that "the terms and conditions of the subsequent employment [would] become less favorable within a year . . . ." (Id.)

By letter dated October 17, 2013, the Plan Administrator upheld the denial of benefits on appeal. (Novich Decl., Ex. J ("Appeal Denial").) The Plan Administrator first addressed the comparability issue, finding that Plaintiff's contention that the location and duties of the Huntsman position were comparable only for a short period (through June 2011), was misleading since Plaintiff was terminated in June 2011. (Id. at 3.) Thus, the Plan Administrator concluded, Plaintiff's "employment with Huntsman was comparable for his entire tenure with Huntsman." (Id.) Moreover, the Plan Administrator again emphasized that the Plan only provides comparability factors that the Plan Administrator "may" consider, including location, total compensation including base pay, variable pay, and other benefits, and the primary duties and responsibilities of the position offered. Since "[t]he Plan Administrator took into account all of these factors . . . [Plaintiff's] assertion that the Plan Administrator ignored total compensation is simply wrong." (Id.) The Plan Administrator then quoted a portion of the Denial Letter, which indicated that the Plan Administrator had in fact considered all three of the factors, including total compensation, but found that the conditions of employment that were similar outweighed whatever dissimilarities existed in terms of bonus and severance:

> The Claim asserts that Mr. Andrews's position with the Buyer [Huntsman] was not comparable because the Buyer did not have a severance plan and because he has not been paid a bonus that he asserts would have been available had he continued to provide services to [SIR]. While this may weigh against a conclusion that the position was comparable, the Plan Administrator has determined that other facts present in this case (e.g., identical duties and responsibilities, identical location, identical base pay, and primarily comparable benefits) establish that the position with the Buyer was comparable under the Plan Administrator's interpretation of that term as used in the Plan.[4]

---

[4] This is not a verbatim quotation of the Denial Letter, as provided to the Court. The Denial Letter does not include the clause that reads, "While this may weigh against a conclusion that the position was comparable," instead stating, as quoted above, "Contrary to this position, the Claim acknowledges that the Buyer did, in fact, provide Mr.

(Id.) The Plan Administrator therefore again concluded that Plaintiff was not eligible for sever-
ance under the Plan. (Id.)

On November 18, 2013, Plaintiff filed his original Complaint in this Court. Plaintiff filed
the Amended Complaint on March 7, 2013, alleging that "[t]he Administrator's denial of the claim
was arbitrary and capricious and an abuse of discretion" and claiming an award of $259,781.51 in
unpaid severance benefits. (Am. Compl. at ¶¶ 16, 27.) Defendant then filed the present motion.

## DISCUSSION

### I.     Motion to Dismiss Standard

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, ac-
cepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S.
662, 678 (2009) (internal quotation marks omitted). "A claim has facial plausibility when the
plaintiff pleads factual content that allows the court to draw the reasonable inference that the de-
fendant is liable for the misconduct alleged." Id. The Court is "not bound to accept as true a
legal conclusion couched as a factual allegation." Id. (internal quotation marks omitted).[5]

### II.    Plaintiff's Standing Under ERISA § 502(a)(1)(B)

Plaintiff contends that Defendant wrongfully denied his claim for severance benefits in
violation of ERISA § 502(a)(1)(B), which allows a "participant or beneficiary" of a plan to bring
a civil action "to recover benefits due to him under the terms of his plan . . . ." 29 U.S.C. §

---

Andrews with severance coverage for the first year, and that it agreed to honor and abide by the terms of his employ-
ment contract with [SIR] (including the bonus provision). Thus, while Mr. Andrews contends that the Buyer did not
fulfill its contractual obligations to him, it is undisputed that he was offered comparable terms of employment." (De-
nial Letter at 28.) It is unclear if the substituted phrase was a misquotation or meant to be an independent justification
for the decision on appeal. Regardless, both versions express the same idea: even if bonus and severance were not
comparable, other factors considered by the Plan Administrator weighed toward a finding of overall comparability.
    [5] The Court recognizes that "nearly all of the cases that raise similar legal disputes under ERISA arise in the
summary judgment context. Nevertheless, this does not preclude the Court from addressing the merits of the Plain-
tiff's claims at this stage in the litigation." Boison v. Ins. Servs. Office, Inc., 829 F. Supp. 2d 151, 157 (E.D.N.Y.
2011).

1132(a)(1)(B). To maintain a claim under this provision, "a plaintiff must demonstrate that the employee benefit plan in question is a plan covered by ERISA, that he is a participant in or beneficiary of the plan, and that he exhausted administrative remedies." Pelosi v. Schwab Capital Markets, L.P., 462 F. Supp. 2d 503, 509 (S.D.N.Y. 2006). It is undisputed that the Plan is governed by ERISA and that Plaintiff has exhausted administrative remedies. Defendant argues in a footnote of its opening brief, however, that Plaintiff is not a "participant or beneficiary" of the Plan and therefore has no standing to sue under ERISA § 502(a)(1)(B).

ERISA defines "participant" as "any employee or former employee of an employer . . . who is or may become eligible to receive a benefit of any type from any employee benefit plan . . . ." 29 U.S.C. § 1002(7). The Supreme Court has in turn elaborated on this definition, including within it "former employees . . . who have a colorable claim to vested benefits." Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 117 (1989) (internal quotation marks omitted). "In order to establish that he or she may become eligible for benefits, a claimant must have a colorable claim that (1) he or she will prevail in a suit for benefits, or that (2) eligibility requirements will be fulfilled in the future." Id. at 117-18 (internal quotation marks omitted).

The Court need not resolve this issue at this time because this is a question of statutory standing, rather than Article III standing. "Unlike Article III standing, which ordinarily should be determined before reaching the merits, statutory standing may be assumed for purposes of deciding whether the plaintiff otherwise has a viable cause of action." Coan v. Kaufman, 457 F. 3d 250, 256 (2d Cir. 2006) (citation omitted) (finding it unnecessary to determine whether the plaintiff was a "participant" under ERISA as a matter of statutory standing and assuming without deciding that she was). The Court will therefore presume that Plaintiff has statutory standing and

proceed to addressing the merits of his action. <u>See</u> <u>Boison</u>, 829 F. Supp. 2d at 157 (proceeding similarly).

## III.   Recovery of Benefits Pursuant to ERISA § 502(a)(1)(B)

### A.   Standard of Review

#### 1.   The Arbitrary and Capricious Standard Applies

When denial of benefits is challenged under ERISA § 502(a)(1)(B), it "is to be reviewed under a de novo standard unless the benefit plan gives the administrator . . . discretionary authority to determine eligibility for benefits or to construe the terms of the plan." <u>Firestone</u>, 489 U.S. at 115. Where the plan grants the administrator such discretionary authority, "a deferential standard of review is appropriate." <u>McCauley v. First Unum Life Ins. Co.</u>, 551 F.3d 126, 132 (2d Cir. 2008). "Under the deferential standard, a court may not overturn the administrator's denial of benefits unless its actions are found to be arbitrary and capricious, meaning 'without reason, unsupported by substantial evidence or erroneous as a matter of law.'" <u>Id.</u> (internal quotation marks omitted). "Where both the plan administrator and a spurned claimant offer rational, though conflicting, interpretations of plan provisions, the administrator's interpretation must be allowed to control." <u>Id.</u> (internal quotation marks omitted). "Nevertheless, where the administrator imposes a standard not required by the plan's provisions, or interprets the plan in a manner inconsistent with its plain words, its actions may well be found to be arbitrary and capricious." <u>Id.</u> at 133 (internal quotation marks omitted).

The Plan here expressly grants the Plan Administrator "exclusive discretionary authority and power to determine eligibility for benefits and to construe the terms and provisions of the Plan . . . ." (Plan art. VI § (b).) Accordingly, it is undisputed that the arbitrary and capricious standard applies.

10

### 2.  Weight Given to Alleged Conflict of Interest

Even under the deferential arbitrary and capricious standard, where a plan administrator "both evaluates and pays benefits claims," thereby creating a conflict of interest, the court "must take [the conflict] into account and weigh [it] as a factor in determining whether there was an abuse of discretion . . . ." McCauley, 551 F.3d at 133; see also Metropolitan Life Ins. Co. v. Glenn, 554 U.S. 105, 112 (2008) ("where it is the employer that both funds the plan and evaluates the claims . . . every dollar provided in benefits is a dollar spent by . . . the employer; and every dollar saved . . . is a dollar in [the employer's] pocket" (internal quotation marks omitted)).  "The weight properly accorded [such a conflict] varies in direct proportion to the likelihood that the conflict affected the benefits decision." Durakovic v. Building Serv. 32 BJ Pension Fund, 609 F.3d 133, 139 (2d Cir. 2010) (internal quotation marks and alteration omitted).

Plaintiff argues that because the Plan is employer-administered and employer-funded, the Plan Administrator had an inherent conflict of interest that must be considered by the Court. (Opp. at 7.) Plaintiff further contends that because the circumstances here suggest a "higher likelihood" that the conflict affected the decision, the conflict should "weigh heavily" in the Court's determination. (Opp. at 9, 10 (citing Gill v. Bausch & Lomb Supplemental Ret. Income Plan I, 1 F. Supp. 3d 72, 88 (W.D.N.Y. 2014) aff'd, No. 14-1058, 2014 WL 6778391 (2d Cir. Dec. 3, 2014).).

Plaintiff is correct that since Realogy Corporation (or its Senior Vice President of Human Resources) is both the Plan Administrator as well as an entity that funds the Plan, (see Plan art. V § (g) (stating that Realogy Corporation and certain of its subsidiaries "shall pay for benefits under the Plan out of [their] general assets")), the Plan Administrator is operating under an inherent conflict of interest that "must be weighed as a factor in determining whether there was an abuse of discretion." Firestone, 489 U.S. at 115 (internal quotation marks and alteration omitted).

The Court disagrees, however, with Plaintiff's contention that this conflict must "weigh heavily" on the Court's ultimate determination because the circumstances here evidence a "higher likelihood" that the conflict actually influenced the Plan Administrator's decision. See Glenn, 554 U.S. at 117 ("The conflict of interest . . . should prove more important . . . where circumstances suggest a higher likelihood that if affected the benefits decision . . . ."). Courts have found that a conflict affected the benefits decisions where there was a "history of biased claims administration"; where the administrator engaged in "deceptive or unreasonable conduct"; where the administrator took inconsistent positions that were both financially advantageous; where the administrator relied on a single report, which aligned with its financial interests, "to the detriment of a more detailed contrary report without further investigation"; and where the administrator "summarily dismissed" a claimant's report, which was "vastly more detailed and particularized than the report on which the [administrator] relied." Durakovic, 609 F.3d. at 139-140 (internal quotation marks omitted).

Plaintiff has failed to allege any comparable facts that show how the inherent conflict actually affected the Plan Administrator's decisionmaking. See Boison, 829 F. Supp. 2d at 159 (E.D.N.Y. 2011) (on motion to dismiss, noting that "the real concern is whether the [p]laintiff has articulated any basis to show that the administrator's conflict of interest affected the choice of a reasonable interpretation" and rejecting the plaintiff's "conclusory statement" to that effect as having not provided "any plausible indication that [the administrator's] inherent conflict actually affected the denial of the [p]laintiff's benefits" (internal quotation marks omitted)). Plaintiff argues that because the Plan Administrator "decided to ignore" Andrews' total compensation package and the length of time he could expect comparable employment from Huntsman, it can be inferred that the conflict actually influenced the Plan Administrator's decision. (Opp. at 10.)

12

Reference to the Plan itself, however, refutes this argument. The Plan lists out three separate considerations, including "total compensation," and plainly states that the Plan Administrator "may" – not must – take them into account. (Plan art. III § A(a).) Such broad discretion notwithstanding, the Plan Administrator did, in fact, consider these factors. The Appeal Denial expressly addressed both of these considerations, finding that even assuming Plaintiff's total compensation was not the same and that his severance benefits lasted only through one year of employment, "other facts present in this case (e.g., identical duties and responsibilities, identical location, identical base pay, and primarily comparable benefits)" were enough to "establish that the position with the Buyer was comparable . . . ."[6] (Appeal Denial at 3.) That the Plan Administrator weighed these factors differently than Plaintiff would have liked – as the Plan Administrator, with its "sole and absolute discretion," was empowered to do – is not an indication of the effects of a conflict of interest. See Griffin v. New York State Nurses Ass'n Pension Plan & Benefits Fund, 757 F. Supp. 2d 199, 211 n.15 (E.D.N.Y. 2010) (concluding that the plaintiff did not show that the conflict actually affected the reasonableness of the decision where the plaintiff alleged that "the defendants denied plaintiff's claim '[d]espite substantial evidence to the contrary'" because that merely reflected her "different conclusions regarding the Plan's provisions" (alteration in original)).

Plaintiff also makes the conclusory allegation that, because Realogy Corporation "negotiated away" their employees' bonus and severance rights in the Huntsman transaction, the Plan Administrator is somehow more seriously conflicted than in the normal course. (Opp. at 10.) This argument is insufficient to bolster the weight given the conflict of interest since it is devoid of any

---

[6] The Denial Letter addressed these two considerations even more squarely: "the Claim acknowledges that the Buyer did, in fact, provide Mr. Andrews with severance coverage for the first year, and that it agreed to honor and abide by the terms of his employment contract with [SIR] (including the bonus provision). Thus, while Mr. Andrews contends that the Buyer did not fulfill its contractual obligation to him, it is undisputed that he was offered comparable terms of employment." (Denial Letter at 28.)

factual support regarding how the nature and parameters of the deal actually affected the Plan Administrator's decision.[7]

Therefore, the Court takes into consideration the inherent conflict of interest, without additional weight, in determining whether the Plan Administrator's decision was arbitrary and capricious. See Durakovic, 609 F.3d at 140 ("No weight is given to a conflict in the absence of any evidence that the conflict actually affected the administrator's decision.").[8]

### B. Merits of Plaintiff's Claim

As discussed above, the Plan provides that in determining whether or not an employee was offered "comparable" employment, the Plan Administrator may consider, "without limitation," three factors: "(1) the location of the position offered; (2) the total compensation of the position offered including base pay, variable pay and other benefits; and (3) the primary duties and responsibilities of the position offered." (Plan art. III § A(a).)  Plaintiff does not dispute that the location

---

[7] In any event, the asset sale was between SIR and Huntsman, not Realogy Corporation and Huntsman. While Plaintiff alleges that Realogy Corporation is a parent of SIR, there is no indication in the Amended Complaint that Realogy Corporation had anything to do with the transaction, much less that it negotiated any employment benefit provisions.

[8] It is true that, at this stage in the litigation, "the record may lack evidentiary proof upon which the Court could assess the Plaintiff's claim that [the Plan Administrator's] inherent conflict affected its benefits determination, because no discovery has yet to be completed," Boison, 829 F. Supp. 2d at 160, and that "discovery may be appropriate in some cases where a petitioner seeks to show a conflict of interest . . . ." Wagner v. First Unum Life Ins. Co., 100 Fed. Appx. 862, 864 n.1 (2d Cir. 2004). To justify such discovery beyond the administrative record, however, a plaintiff "must demonstrate that the requested discovery would assist in establishing the good cause necessary to expand the record on review." Boison, 829 F. Supp. 2d at 160. That standard may be met where the Plaintiff demonstrates a conflict of interest "as well as some additional factor, such as lack of 'established criteria for determining an appeal,' a 'practice of destroying or discarding all records within minutes after hearing an appeal,' or a 'failure to maintain written procedures' for claim review." Pretty v. Prudential Ins. Co. of Am., 696 F. Supp. 2d 170, 183 (D. Conn. 2010) (quoting Locher v. Unum Life Ins. Co. of Am., 389 F.3d 288, 293, 296 (2d Cir. 2004)); see also Rubino v. Aetna Life Ins. Co., No. 07-CV-377-LDW-AKT, 2009 WL 910747, at *3 (E.D.N.Y. Mar. 31, 2009) ("a party seeking to conduct discovery outside the administrative record must allege more than a mere conflict of interest"). This standard would apply here, since Plaintiff does not dispute Defendant's characterization of the materials already submitted as "compris[ing] the administrative record." (Def.'s Br. at 3 n.1.)

For the reasons stated above, Plaintiff has not raised any plausible claims that would warrant additional discovery on the conflict of interest issue. Plaintiff has "merely alleged the structural conflict of interest that obviously exists and is acknowledged by the Defendant" without alleging any other facts that would plausibly lead to a finding that the conflict actually affected the reasonableness of the Plan Administrator's decision. Boison, 829 F. Supp. 2d at 160.

and the primary duties and responsibilities of the Huntsman position were in fact comparable.  Nor

does he dispute that his base pay and other benefits were comparable.  Plaintiff contends only that

the Plan Administrator "purposefully ignored" the fact that Plaintiff's "total compensation" was

not comparable with respect to his bonus, severance, and length of time he was eligible for both.

(Opp. at 11.)  Specifically, Plaintiff reiterates the arguments made before the Plan Administrator,

asserting that at the time of his SIR termination, he was entitled to a bonus each year and eligible

for severance benefits regardless of when he was terminated.  (Id. at 13-14.)  Since his position

with Huntsman did not include any express commitment to pay a bonus beyond 2010 and did not

include a commitment to pay severance after the first year of employment, his position, he argues,

was not comparable.  (Id. at 14.)

     To the extent that Plaintiff rests his argument on the contention that the Plan Administrator

"ignored" total compensation, the Court has already concluded that the Plan Administrator, rather

than "ignoring" these considerations, simply weighed them differently than Plaintiff would like.

     The real crux of Plaintiff's argument is that the Plan Administrator failed to adequately

account for the fact that the compensation factors it found to be comparable were only guaranteed

for a short period.  Plaintiff cites Anderson v. Sotheby's Inc., No. 04-CV-8180-SAS, 2006 WL

1722576 (S.D.N.Y. June 22, 2006) for the proposition that "consideration must be given to com-

parable compensation over a larger time frame than just a few months or the next year of

employment." (Opp. at 12.)  In Anderson, the court found that the denial of severance benefits

was arbitrary and capricious because, in part, the administrator had only considered the guaranteed

income Anderson would have earned at his new employer for the years 2004 and 2005, while

ignoring the data for 2006 to 2008, where the "absolute amount of compensation is significantly

less than Anderson's SIR compensation in recent years." Anderson, 2006 WL 1722576, at *18.

15

The court noted that because Anderson had worked at SIR for over twenty years, there was "no reason to presume that he would have worked for [the new employer] for only two years." Id.

Analogizing to Anderson, Plaintiff contends that the Plan Administrator erred by only considering the fact that Plaintiff's severance coverage would be comparable "for the first year" and by failing to acknowledge that his bonus eligibility would be honored "only through 2010." (Opp. at 15.) Taking into account Plaintiff's seven-year history of employment with SIR and the bonus payments he received "most" years, Plaintiff argues that the Plan Administrator "abused his discretion in only viewing the comparability of the offer in the immediate future and not over a longer period." (Id. at 15.)

Plaintiff's argument fails. In Anderson, despite noting Anderson's 20-year employment history, the court did not consider Anderson's prospective employment conditions for some indeterminate "longer period." Instead, the court looked only to the detailed compensation data the new employer had provided – data for the years 2004-2008, which established that Anderson's total compensation would decrease between 2006 and 2008. Anderson, 2006 WL 1722576, at *4. The court was therefore justified in finding that the administrator abused its discretion by "cherry-pick[ing]" the first two years of data and ignoring the latter three. See id., at *15.

Here, no such prospective data was presented to the Plan Administrator. At the time the employment was *offered* – which is the operative time under the Plan (see Plan art. III § A(a) (eligibility for severance depends on whether the employee is "offered a comparable position")) – the terms and conditions of Plaintiff's employment with Huntsman beyond what had already been agreed to was indeterminate.[9] David Huntsman's email to Plaintiff said only that Huntsman would

---

[9] Plaintiff speculates that "it appears that Huntsman did not have its own bonus or severance plan." (Am. Compl. at ¶ 13a.) Even if that were true, this information was apparently not known at the time of the employment offer. In any event, this indeterminacy is not grounds for finding that the Huntsman position was not comparable. Plaintiff's employment with SIR was always at-will, and his bonus was dependent on variable factors each year, such

honor the conditions and elements of his existing employment contract through 2010; it did not say that beyond that point, Plaintiff would be denied bonuses and severance. (Novich Decl., Ex. D.) Had the Huntsman email informed Plaintiff that he would be eligible for a bonus through 2010 but be categorically denied any bonuses thereafter, or that he would receive significantly lower compensation for the next several years, and the Plan Administrator still only took into account the initial bonus eligibility without addressing the future compensation decrease, then it would be plausible that, like in Anderson, the Plan Administrator acted arbitrarily and capriciously. But on the record before the Court, no such information was presented at the time of the offer.

The same is true as to the APA's severance provision, which provides only that Huntsman will pay an SIR-equivalent severance if the employee is terminated within one year of closing (APA, § 7(f)(i)); there is no indication, however, what is to happen after that. It would have been entirely possible that beyond the one-year mark, Huntsman would institute its own severance plan, which may have been comparable to SIR's, or allowed for individually negotiated severance packages with employees like Plaintiff. There is no indication in the record that at the time of the SIR-Huntsman transaction – that is to say, at the time the Huntsman position was "offered" to Plaintiff – there would be no severance plan after one year of employment.

Therefore, unlike the administrator in Anderson, who had definitive, detailed calculations of five years of employment data but chose only to "cherry-pick" the data most advantageous to it, the Plan Administrator here considered all of the data available at the time of the offer, including comparable bonus eligibility through 2010 and comparable severance eligibility through mid-

---

as the profit earned by the Jackson Hole Brokerage Office. (See Novich Decl., Ex. B.) Severance benefits were just as variable: the Plan itself explicitly states that "[n]otwithstanding anything in this Plan to the contrary, the Company expressly reserves the right, at any time, for any reason, without limitation and in its sole and absolute discretion, to terminate, amend or modify the Plan and any or all of the benefits provided thereunder . . . ." (Plan art. V § (b).) Therefore, the conditions of Plaintiff's employment at SIR were not indefinitely guaranteed.

2011. Upon examining this data, he found that, all factors taken together, the position was comparable.[10] The Plan Administrator was under no obligation – and Anderson creates no such obligation – to assume that the terms of Plaintiff's future employment over some indeterminate "longer period" would be worse than his employment at SIR and therefore find the employment not to be comparable. To conclude otherwise would put plan administrators in the impossible position of having to predict the future in evaluating present comparability.

The Plan Administrator's decision was thus entirely rational, particularly taking into account the broad discretion granted to it by the Plan. Under the arbitrary and capricious standard of review, the Court cannot say that that decision was "without reason, unsupported by substantial evidence or erroneous as a matter of law." McCauley, 551 F.3d at 132 (internal quotation marks omitted).[11]

Ultimately, this case comes down to Plaintiff's disagreement with a reasonable decision made by the Plan Administrator. "Where both the plan administrator and a spurned claimant offer rational, though conflicting, interpretations of plan provisions, the administrator's

---

[10] Indeed, Plaintiff's reply to David Huntsman's email makes clear that both he and Huntsman were in agreement that the position was comparable as offered, and that Plaintiff would negotiate the post-2010 terms of employment at a later date. (Novich Decl., Ex. I at 38 ("I am comfortable with your verbal and written assurance for the time being until such time as we are able to discuss the specifics of my role after 2010.").) Believing that Huntsman subsequently did not make good on its assurances, Plaintiff has already sought relief from Huntsman. See supra note 3; see also Andrews v. Sotheby Int'l Realty, Inc., No. 12-CV-8824-RA, 2014 WL 626968 (S.D.N.Y. Feb. 18, 2014). He cannot now, however, use the severance plan of his former employer as an insurance policy against unsatisfactory employment with Huntsman. Cf. Bradwell v. GAF Corp., 954 F.2d 798, 801 (2d Cir. 1992) ("We have observed that, in the context of the sale of a business where the buyer retains the former owner's employees, it would give a windfall to award severance pay to employees who never changed their jobs and were never out of work.")

[11] Plaintiff's reliance on Yochum v. Barnett Banks, Inc. Severance Pay Plan, 234 F.3d 541 (11th Cir. 2000) is similarly unavailing. There, the plaintiff had a two-year agreement with his former employer upon a change in control. Yochum, 234 F.3d at 545. The new position offered by the former employer's buyer would have entailed a 25% decrease in the plaintiff's incentive package after one year. Id. The court therefore found that the administrator acted arbitrarily and capriciously in determining that the offer was comparable to the plaintiff's former position. Conversely here, Plaintiff has not alleged that Huntsman violated any sort of SIR change-in-control guarantee. In addition, the 25% decrease in Yochum's incentive package was, evidently, a fact known at the time of the employment offer, which, consistent with Anderson, the administrator should have considered. But as discussed above, no such definitive decrease in compensation was presented as part of the Huntsman offer and thus, unlike in Yochum, the Plan Administrator here could not have been expected to consider any such decrease.

interpretation must be allowed to control." McCauley, 551 F.3d at 132 (internal quotation marks omitted). The question is not a close one, and since the Court has no difficulty finding that the Plan Administrator did not act arbitrarily and capriciously, the inherent conflict of interest at issue in this case – which, as discussed above, does not merit greater weight – does not change this outcome. See VanWright v. First Unum Life Ins. Co., 740 F. Supp. 2d 397, 405 (S.D.N.Y. 2010) ("The presence of a conflict of interest should be dispositive only as a 'tie-breaker,' and is not relevant when the conflicted party's conduct cannot otherwise be characterized as arbitrary or capricious."); see also Glenn, 554 U.S. at 117 ("any one factor will act as a tiebreaker when the other factors are closely balanced, the degree of closeness necessary depending upon the tiebreaking factor's inherent or case-specific importance").[12]

## CONCLUSION

Defendant's motion to dismiss is granted. Because the Court finds that Plaintiff has not plausibly alleged that the Plan Administrator acted arbitrarily and capriciously in denying Plaintiff's claim on comparability grounds, it need not address Plaintiff's other allegations. The Clerk of Court is directed to terminate any pending motions and to close this case.

SO ORDERED.

Dated:     February 20, 2015
           New York, New York

_____
Ronnie Abrams
United States District Judge

---

[12] The Amended Complaint purports to state an additional claim separate from the Plan Administrator's denial of benefits. Plaintiff alleges that his rights were violated because Defendant failed to inform him of "all circumstances which may result in disqualification, ineligibility or denial or loss of benefits" as it is required to do under ERISA. (Am. Compl. at ¶ 29.) Plaintiff claims that Defendant failed to do so in that the Plan "does not state that a failure to submit a claim within a certain time frame will result in disqualification, ineligibility or denial of the claim." (Id.) To the contrary, the Plan could not be clearer in this regard. It explicitly states that "[i]f you wish to make a claim for payment of benefits under the Plan, a claim must be filed . . . within 180 days of the date you terminated employment . . . ." (Plan § VI(a).) The Court therefore dismisses this claim as without merit.